UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNARD BROOKS, JR.,

                              Petitioner,                    20-CV-1108 (JLS)

             v.

THOMAS STICHT,
Superintendent of the
Wyoming Correctional Facility,

                              Respondent.



_____

### DECISION AND ORDER

*Pro se* petitioner Bernard Brooks, Jr. is in Respondent's custody pursuant to

a March 23, 2017 judgment entered against him in New York State, Erie County

Court (DiTullio, J.).  Brooks was convicted after a jury trial of second-degree

criminal possession of weapon (N.Y. Penal Law § 265.03(3)) and sentenced to a

determinate term of eight years of imprisonment plus five years of post-release

supervision.  His conviction was affirmed on direct appeal.  *People v. Brooks*, 123

N.Y.S.3d 358 (N.Y. App. Div. 2020), *lv. denied*, 151 N.E.3d 529 (N.Y. 2020).

On May 13, 2020, Brooks filed a Petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  Dkt. 1.  Recently, he requested leave to amend the Petition to

add several claims, Dkts. 11, 15, and to have the proceeding stayed and held in

abeyance while he completes exhaustion proceedings.  Dkts. 10, 15.  For the

following reasons, the Court GRANTS leave to amend; DENIES the request for a

stay; and DISMISSES this proceeding without prejudice for failure to exhaust, with leave to re-file once exhaustion proceedings are complete.

## BACKGROUND

### I.    THE ORIGINAL PETITION

In the original Petition, Brooks raised the following claims:  (1) the trial court violated his right to a fair trial by declining to dismiss a distracted and inattentive juror (Ground One); (2) the prosecutor's summation comments violated his right to a fair trial (Ground Two); (3) trial counsel was ineffective for failing to object to the prosecutor's improper summation comments (Ground Three); and (4) the sentence was harsh and excessive (Ground Four).  Dkt. 1 at ¶ 12.

In his Response, Respondent did not raise the defense of non-exhaustion, but argued that Grounds One and Two are subject to an unexcused procedural default because the intermediate appellate court relied upon an adequate and independent state ground as a basis to dismiss them on direct appeal.  Dkt. 5 at 5-6, 9.[1] Respondent further contended that all four grounds are meritless.  *Id.* at 3-15.

### II.    THE MOTION TO STAY

After obtaining an extension of time to file a reply brief, Brooks instead filed a Motion to Stay to raise and exhaust "unresolved issues" of "constitutional dimensions" in state court.  Dkt. 8 at 2, 3.  Due to the application's lack of clarity, the Court denied the motion without prejudice in a Decision and Order entered

---

[1] Unless otherwise noted, page references are to the sequential numbering automatically generated by CM/ECF, which appears in the header of each page.

January 27, 2021, Dkt. 9, and instructed Brooks to file a renewed motion addressing whether he meets the stay requirements under *Rhines v. Weber*, 544 U.S. 269 (2005), and whether the proposed new claims "relate back" to the original claims under *Mayle v. Felix*, 545 U.S. 644, 650 (2005). In addition, the Court directed Brooks to file a motion to amend the Petition to add the new claims, along with a proposed amended petition.

## III.   THE RENEWED MOTION TO STAY AND AMENDED PETITION

On February 23, 2021, Brooks responded to the Court's previous order by filing a renewed Motion to Stay, Dkt. 10, and a proposed Amended Petition. Dkt. 11. Brooks reasserted the same four claims raised in the original Petition, along with the following four new claims: (1) the verdict was against the weight of the evidence because the trial court allowed perjured testimony from the prosecution's witnesses (Ground Five); (2) the trial court abused its discretion in denying a missing witness charge with regard to the 911 dispatcher and a Buffalo Police Department officer, Patrina Muhammed who, in addition to the two arresting officers who testified at trial, was present at the crime scene (Ground Six); (3) the evidence was legally insufficient to prove the element of possession beyond a reasonable doubt (Ground Seven); and (4) trial counsel was ineffective for failing to call, as defense witnesses, the 911 dispatcher and Officer Muhammed, as well as "any person(s) involved with the manufacturing and/or modifications of the vehicle" he was driving at the time of the incident (Ground Eight). *Id.* at 11-15. Brooks indicated that he had filed a *pro se* application for a writ of error *coram nobis* in the

3

Appellate Division, Fourth Department, of New York State Supreme Court

("Appellate Division"), raising the same claims listed in Grounds Five through

Eight.

Respondent filed an Affidavit in Opposition to the Motion to Stay

characterizing the proposed new habeas claims and the claims in the *coram nobis*

petition as follows:  (1) appellate counsel was ineffective for failing to challenge, on

direct appeal, the weight and legal sufficiency of the evidence and the trial court's

denial of a missing witness instruction (*i.e.*, the failure to raise the claims in

Grounds Five, Six, and Seven as grounds for reversal of the conviction on direct

appeal); and (2) a stand-alone claim of ineffective assistance of trial counsel

("IATC") for failing to call witnesses (*i.e.*, Ground Eight).  Dkt. 12 at 2-3, ¶¶ 9-10,

13, 15.

Respondent argued that the IATC claim in Ground Eight was not being

exhausted in the *coram nobis* application and could only be exhausted via a motion

to vacate, filed in the trial court pursuant to New York Criminal Procedure Law

("C.P.L.") § 440.10.  Respondent further asserted that Brooks was not entitled to a

stay because he showed neither that good cause existed for failing to pursue this

form of state-court relief nor that the IATC claim was potentially meritorious.

Respondent pointed out that appellate counsel did challenge trial counsel's

4

performance—albeit on different grounds—and the Appellate Division held that counsel provided "meaningful representation." Dkt. 12 at 4, ¶ 17.[2]

Brooks filed a Reply disputing whether Ground Eight should be filed in a C.P.L. § 440.10 motion versus a *coram nobis* petition.  He argued that appellate counsel's errors on direct appeal constituted "good cause" under *Rhines* for his failure to exhaust his proposed new claims earlier.  Dkt. 13.

After reviewing the parties' submissions, the Court was left with some uncertainty as to what claims were being raised in the proposed Amended Petition and the *coram nobis* proceeding, and whether they were based on the same facts and legal theories.  The Court determined that it was unable to analyze the propriety of amending the Petition or issuing a stay-and-abeyance because it lacked sufficient information about both the nature of the proposed new claims and the claims being raised in the *coram nobis* proceeding.  Accordingly, the Court issued a Decision and Order requiring Brooks to: (1) submit a copy of his *coram nobis* application; and (2) state whether he is raising Grounds Five through Eight in the

---

[2] Appellate counsel argued that trial counsel was ineffective for failing to object to the prosecutor's summation comments and for mentioning certain uncharged crimes.  The Appellate Division concluded that since the prosecutor's comments on summation "were not improper, defense counsel's failure to object to them did not deprive defendant of effective assistance of counsel[.]" *Brooks*, 183 A.D.3d at 1232 (citations omitted).  In addition, the Appellate Division held that Brooks "failed to demonstrate that those alleged errors were not strategic in nature[,]" *id.* at 1232-33 (quotation and citations omitted), "and, in any event, 'the evidence, the law, and the circumstances of [this] particular case, viewed in totality and as of the time of the representation, reveal that [his] attorney provided meaningful representation[.]'" *Id.* at 1233 (quoting *People v. Baldi*, 54 N.Y.2d 137, 147 (1981) (second and third brackets in original).

proposed Amended Petition (a) as stand-alone claims, (b) as Sixth Amendment

claims of ineffective assistance of appellate counsel ("IAAC") based on the failure to

raise the claims in Grounds through Eight, or (c) as both. Dkt. 14. The Court

indicated that, once it received the information described above, it would rule on the

request to amend and Motion to Stay.

## IV.   PETITIONER'S RESPONSE

On June 7, 2021, Brooks timely filed his response, which was docketed as a

"Notice re State Court Documents." Dkt. 15. It consists of a two-page letter, *id.* at

1-2, followed by copies of a C.P.L. § 440.10 motion, *id.* at 3-32, he recently filed in

New York Supreme Court, Erie County, and the application for a writ of error

*coram nobis. Id.* at 33-56. In response to the Court's question as to whether he was

raising Grounds Five through Eight as stand-alone claims for habeas relief,

predicates for an IAAC claim, or both, Brooks states that those grounds "are in fact

stand alone issues." *Id.* at 2.

In the attached *coram nobis* application, Brooks asserts that his "right to

effective assistance of counsel on direct appeal was violated when appellate counsel

omitted significant issues while pursuing issues that were clearly weaker" (Dkt. 15

at 7, ¶ 29), and that "[t]here are at least four issues that appellate counsel could

have raised but failed to do: [1] verdict was against the weight of the evidence, [2]

evidence was legally insufficient, [3] trial court abused it's [sic] discretion in

denying missing witness charge, and [4] defense counsel was ineffective for failing

to call witnesses." *Id.* at 43, ¶ 36; *see also id.* at 44-54, ¶¶ 39-58 (elaborating on the

merits of the four omitted issues).  The "four issues" correspond to Grounds Five

through Eight, respectively.  The *coram nobis* application thus appears to assert a

claim of IAAC based on the failure to raise the claims in Grounds Five through

Eight.  *See, e.g.*, Dkt. 15 at 35, ¶ 2 ("The basis of this motion is that I was deprived

of my right, under the 5th, 6th, and 14th Amendments of the United States

Constitution and Article 1, § 6 of the New York State Constitution, to the effective

assistance of counsel upon my direct appeal . . . .").

In the C.P.L. § 440.10 Motion, Brooks reasserts Ground Eight, along with a

host of other alleged errors by trial counsel.[3]  Brooks now agrees that the proper

---

[3] In the C.P.L. § 440.10 motion, Brooks demands that trial counsel submit an
affidavit addressing the following alleged errors and issues: "1. Why he did not
inform the defendant of his right to be present at sidebar conferences, and why he
waived defendant's right to be present at said conferences without informing
defendant. 2. Why he failed to subpoena dashcam footage from patrol car
responding to accident; and why he failed to subpoena body cam footage of first
responding officers. 3. Why he failed to subpoena officer Patrina Muhammed, which
according to defendant was the first officer to arrive on the scene. 4. Why he failed
to call the 911 dispatcher to confirm officer McCabe changed data in the CAD. 5.
Why he failed to object 52 times to improper statements made by prosecution
during summation. 6. Why he failed to excuse distracted juror during trial. 7. Why
he failed to investigate the incident. 8. Why he failed to call witness expert and
others, even though a list of witness was provided to him.  9. What his trial strategy
was." Dkt. 15 at 4 (misspellings and punctuation corrected).

The foregoing paragraphs numbered "3" and "4" and the allegations in paragraph
"8" about the uncalled expert witness are the original Ground Eight. The Court will
include the allegations in the remaining paragraphs (1, 2, 5, 6, 7, and 9) under the
umbrella of Ground Eight rather than treating them as separate grounds for relief.
*See, e.g., Davidson v. Keane*, 107 F.3d 2 (Table), 1997 WL 64205, at *1 (2d Cir. Feb.
14, 1997) ("Important factual allegations that are added for the first time to an
ineffective assistance of counsel claim on federal habeas appeal can result in the
claim being dismissed for nonexhaustion. 'To reach the merits of an ineffective
representation claim, all of the allegations must have been presented to the state
courts, allowing them the opportunity to consider all the circumstances and

venue for raising IATC claims is a motion pursuant to C.P.L. § 440.10. *Id.* at 1. He

also asks for permission to amend the Petition to add the claims asserted in the

C.P.L. § 440.10 motion.

## V.   PETITIONER'S LETTER

In an undated one-page letter to the Court received June 18, 2021, Brooks

states that Wyoming County Correctional Facility has unfairly required him to

participate in alcohol and substance abuse training. Dkt. 16. The only information

in the letter that appears relevant to this proceeding is his statement that "courts in

the 4th Department refused [his] *coram nobis*."[4]

## VI.   THE COURT'S NOVEMBER 19, 2021 ORDER

On November 19, 2021, the Court issued another order instructing Brooks to

clarify the status of his claims. Dkt. 17. Brooks responded with an order from the

New York Court of Appeals that denied leave to appeal the Appellate Division's

denial of his *coram nobis* application, Dkt. 20, and a letter indicating that his CPL §

440.10 motion is pending in Erie County Supreme Court. Dkt. 21.

## DISCUSSION

## I.   OVERVIEW OF THE PLEADINGS BEFORE THE COURT

The Court has before it the following pleadings: (1) the original Petition,

containing Grounds One through Four; (2) a proposed Amended Petition containing

---

cumulative effect of the claims as a whole.'") (quoting *Caballero v. Keane*, 42 F.3d
738, 740-41 (2d Cir. 1994)).
[4] The Appellate Division *denied* his application for *coram nobis* on April 30, 2021.
*See People v. Brooks*, 143 N.Y.S.3d 249 (N.Y. App. Div. 2021).

Grounds Five through Eight; and (3) a "Notice Re State Court Documents" Dkt. 15, containing additional unexhausted allegations of IATC that will be deemed a part of Ground Eight.

Both the proposed Amended Petition and the "Notice Re State Court Documents" contain requests to amend the Petition to add new claims. For clarity's sake, the Court will refer to the proposed Amended Petition as the "Motion to Amend" and the Notice as the "Second Motion to Amend."

In addition, both the Motion to Stay and the "Notice Re State Court Documents" contain requests to stay this habeas proceeding and hold it in abeyance during the pendency of Brooks's exhaustion proceedings. References to the "Motion to Stay" refer to these requests.

A request to stay a habeas proceeding and hold it in abeyance is ripe for decision when the operative pleading is a "mixed petition" containing exhausted and unexhausted claims. *Milton v. Racette*, 91 F. Supp. 3d 454, 455 (W.D.N.Y. 2015) (dismissing motion to stay as premature since the "petition is not a 'mixed petition' because it does not currently contain the unexhausted claims [the] [p]etitioner now seeks to pursue in the state courts"). Accordingly, the Court must first determine the exhaustion status of the various claims. The Court next will evaluate the propriety of amendment. And, finally, the Court will address the stay motion.

## II.   EXHAUSTION STATUS OF PETITIONER'S HABEAS CLAIMS

"[B]efore a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)). To afford the state courts the "'opportunity to pass upon and correct' alleged violations of . . . [his] federal rights[,]" *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)), a habeas petitioner must "fairly present[ ]" his claims in federal constitutional terms, such as by "cit[ing] to specific provisions of the U.S. Constitution in his state court brief[.]" *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001) (citations omitted). "The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye v. Attorney Gen'l of the State of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982) (*en banc*) (quoting *Picard*, 404 U.S. at 278).

A petitioner is not deemed to have exhausted his state remedies if he retains the right under state law to raise, by any available procedure, the federal question presented in the habeas petition. 28 U.S.C. § 2254(c). "The Supreme Court has interpreted this as requiring petitioners to invoke 'one complete round of the State's established appellate review process,' including an application to 'a state court of last resort when that court has discretionary control over its docket.'" *Alston v. Donnelly*, 461 F. Supp. 2d 112, 120 (W.D.N.Y. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 843, 845 (1999)).

10

### A. Grounds One Through Four

Grounds One through Four are based on errors that allegedly occurred during trial. A petitioner convicted in a New York state court may exhaust a federal claim of trial-level error by presenting it on direct appeal to the Appellate Division, and then by including it in the leave application to the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Here, Grounds One through Four were raised by appellate counsel to the Appellate Division, and then in the leave application to the New York Court of Appeals. For purposes of resolving the instant motions, Brooks invoked one complete round of New York's appellate review process for Grounds One through Four and has satisfied the exhaustion requirement as to these claims.

### B. Proposed Amended Claims

As noted above, the Court requested clarification from Brooks as to whether the Petition is raising Grounds Five through Eight as stand-alone claims, as Sixth Amendment claims based on appellate counsel's failure to raise the alleged errors in Grounds Five through Eight on direct appeal, or as both. Dkt. 14. Brooks responded that Grounds Five through Eight are "in fact stand alone issues." Dkt. 15 at 2. However, Brooks's then-pending *coram nobis* petition asserted that appellate counsel was ineffective for failing to argue on direct appeal that the verdict was against the weight of the evidence (Ground Five), that the trial court erroneously denied a missing witness charge (Ground Six), that the evidence was legally insufficient (Ground Seven), and that trial counsel was ineffective for failing to call

11

witnesses (Ground Eight).  In other words, the *coram nobis* explicitly asserted Grounds Five through Eight as predicates for a claim of IAAC—yet Brooks appears to be saying that the Petition is *not* raising any IAAC claims.

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  This policy "is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (brackets in original).

With these precepts in mind, the Court surmises that Brooks may have misunderstood the Court's phrasing of the request for clarification as to which claims he is raising in the Petition.  It would make little sense for Brooks to expend time bringing a *coram nobis* application asserting IAAC claims based on appellate counsel's failure to argue the errors alleged in Grounds Five through Eight, but then decline to raise these four exhausted IAAC claims in the Petition.

Reading Brooks's submissions liberally, the Court interprets the Petition as asserting Grounds Five through Eight as both stand-alone claims of error *and* as predicates to IAAC claims.  For clarity's sake, the Court will number the IAAC claims as Grounds Nine (IAAC based on the failure to assert a weight of the

12

evidence claim), Ten (IAAC based on the failure to argue that the trial court erroneously denied a missing witness charge), Eleven (IAAC based on the failure to assert that the evidence was legally insufficient), and Twelve (IAAC based on the failure to argue ineffective assistance due to trial counsel's failure to call witnesses at trial).

Grounds Nine through Twelve, the IAAC claims, have been exhausted.  In New York, the proper vehicle for exhausting claims of error at the appellate level is an application for a writ of error *coram nobis* filed in the appropriate Appellate Division.  *Turner v. Miller*, 124 F. App'x 682, 683-84 (2d Cir. 2005)  (unpublished opn.) (citing *People v. Bachert*, 509 N.E.2d 318, 319 (N.Y. 1987) ("[A] common-law *coram nobis* proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel . . . .")).  To complete one full round of review of an IAAC claim, the petitioner then must seek leave to appeal to the New York Court of Appeals, which is the highest court which may hear *coram nobis* petitions.  *See People v. Stultz*, 810 N.E.2d 883, 885-86 (N.Y. 2004) (recognizing that New York State law "authoriz[es] appeals (by permission) to [the New York Court of Appeals] from appellate orders granting or denying *coram nobis* relief based on claims of ineffective assistance or wrongful deprivation.").  Here, the Appellate Division has since denied his *coram nobis* application, *see supra* note 4, and the New York Court of Appeals denied leave to appeal.  Dkt. 20.

With respect to Grounds Five through Eight, it is well settled that the only claim that appropriately may be exhausted in a *coram nobis* proceeding is one of ineffective assistance of appellate counsel. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) ("In a criminal action, the writ of error *coram nobis* lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel.") (alteration in original, quotation and citation omitted). "The constitutional deprivations alleged in [Grounds Five through Eight] could be advanced in a writ of error *coram nobis* only as predicates for the claim of ineffectiveness, on the theory that effective counsel would have appealed on those grounds." *Id.* However, "a petitioner cannot show exhaustion unless he has 'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.'" *Id.* (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)). "The only constitutional claim [Brooks] was permitted to raise in seeking a writ of error *coram nobis* was ineffective assistance of appellate counsel, a claim that is distinct from [Grounds Five through Eight] in procedural terms under state law and in their federal constitutional sources." *Id.* Therefore, Grounds Five through Eight could not have been exhausted by means of a *coram nobis* application. *See id.* (holding that petitioner's claims that the prosecutor displayed inflammatory photographs of the victims and improperly vouched for a state witness's credibility were not exhausted by raising them in a *coram nobis* proceeding); *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) (unpublished opn.) (stating that a *coram nobis*

application raising a claim of ineffective assistance of appellate counsel for failure to

assert on appeal that the shackling of petitioner at trial interfered with his Sixth

Amendment right to self-representation would not "fairly present" the underlying

claim regarding shackling; he could only raise appellate counsel's effectiveness in a

*coram nobis*, a claim that is distinct from the shackling claim, even though both

were based on the Sixth Amendment).

Grounds Five, Six, and Seven, which are based on errors that occurred before

the trial court, should have been exhausted by raising them on direct appeal to the

Appellate Division. *Galdamez*, 394 F.3d at 74. As discussed above, Appellate

counsel omitted to raise them, leading to Brooks's attack on appellate counsel's

effectiveness via the *coram nobis* petition. If Brooks were to return to state court to

attempt to exhaust Grounds Five, Six, and Seven in a different procedural vehicle,

he would face an absence of corrective process. First, he cannot bring another direct

appeal of his conviction because he has used the one request for leave to appeal to

which he is entitled under N.Y. Ct. App. R. 500.20(a)(2) (stating that letter seeking

leave to appeal to New York Court of Appeals "shall indicate . . . that no application

for the same relief has been addressed to a justice of the Appellate Division, as only

one application is available"). *Accord, e.g., Cunningham v. Conway*, 717 F. Supp.

2d 339, 365 (W.D.N.Y. 2010) (citing, *inter alia*, N.Y. R. Ct. § 500.20(d), *Colon v.

Connell*, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n.4 (S.D.N.Y. July 9,

2009)). Second, if Brooks raised Grounds Five, Six, and Seven in a motion to vacate

pursuant to C.P.L. § 440.10, the trial court would be required to deny it pursuant to

15

C.P.L. § 440.10(2)(c) because all three claims are both apparent on the trial record and could have been raised on appeal. *See Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.") (citations omitted).

Where the petitioner had an opportunity to raise a claim but did not and is now without a state forum for the claim, the federal courts "deem" the claims exhausted. *See Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991); *see also* 28 U.S.C. § 2254(c). When, however, a claim is deemed exhausted because of a state procedural bar, such bar "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default," *Gray v. Netherland*, 518 U.S. 152, 162 (1996), "or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Rush*, 500 F. App'x at 15 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, without the benefit of the full record, the Court is unable to say that Brooks could not excuse the procedural default by showing cause and prejudice or that a fundamental miscarriage of justice would occur in the absence of review of the defaulted claims. For instance, Brooks has exhausted IAAC claims, and meritorious ineffective assistance claims can serve as "cause." *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (stating that "in certain circumstances counsel's

16

ineffectiveness in failing properly to preserve the claim for review in state court will suffice" as "'cause' to excuse a procedural default"). The Court emphasizes that it expresses no opinion on the merits of any of the Petition's claims or Brooks's ability to overcome a procedural default. The Court simply concludes that Grounds Five, Six, and Seven must be deemed exhausted.

Ground Eight, however, was based on an error not presented in the record before the state trial court and is currently pending via a C.P.L. § 440.10 action. Accordingly, it is unexhausted.

## III.    THE MOTIONS TO AMEND

### A.  Standards for Amending a Habeas Petition

Rule 11 of the Rules Governing Section 2254 cases in the United States District Courts "permits application of the Federal Rules of Civil Procedure in habeas cases 'to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules.'" *Mayle*, 545 U.S. at 654-55 (citing Fed. R. Civ. P. 81(a)(2) (The civil rules "are applicable to proceedings for . . . habeas corpus."); 28 U.S.C. § 2242 (providing habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions")). Once a responsive pleading has been served, the party seeking to amend must obtain consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a).

"In general, leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Lear v. Poole*, 711 F. Supp. 2d 288, 292 (W.D.N.Y. 2010) (quoting *Dluhos v. Floating & Abandoned*

*Vessel known as "New York"*, 162 F.3d 63, 69-70 (2d Cir. 1998) (further quotation omitted in original)).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quotation omitted).  Nonetheless, "'[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'"  *Lucente v. International Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (quotation omitted).

"Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the [same] conduct, transaction, or occurrence.'"  *Mayle*, 545 U.S. at 655 (quoting Fed. R. Civ. P. 15(c)(2); first alteration in original).  Therefore, the Court must determine when the Petition and the proposed new claims in the Motions to Amend were filed.  *See, e.g., Peralta v. Connelly*, No. 06 CIV. 5360 DAB MHD, 2008 WL 8050791, at *8 (S.D.N.Y. Apr. 18, 2008) (Finding that a habeas petition is timely: "[t]he remaining questions are (1) whether the proposed amendment is independently timely and (2) if not, whether it relates back to the original, timely petition and is therefore itself timely"), *report and recommendation adopted*, No. 06 CIV. 5360 DAB, 2010 WL 3219326 (S.D.N.Y. Aug. 11, 2010).

18

## B. The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") contains a one-year statute of limitations which begins to run upon the latest of four events. *See* 28 U.S.C. § 2244(d)(1)(A)-(D).  In most Section 2254 cases, including this one, the relevant occurrence is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  28 U.S.C. § 2244(d)(1)(A); *see also Gonzalez v. Thaler*, 565 U.S. 134, 149-50, 147 n.9 (2012).

A state conviction becomes "final" when the United States Supreme Court denies an application for a writ of *certiorari* or when the time to seek *certiorari* has expired, which is 90 days following the date on which direct review by the state's highest court is complete.  *Gonzalez*, 565 U.S. at 150.

## C. The Petition and the Proposed New Claims in the Motions to Amend Are Timely

The New York Court of Appeals denied leave to appeal on July 15, 2020. *People v. Brooks*, 151 N.E.3d 529 (N.Y. 2020).  Brooks did not seek a writ of *certiorari* from the United States Supreme Court.  Dkt. 1, ¶ 9(h).  Therefore, his conviction became final 90 days later, on October 13, 2020.  The one-year statute of limitations in this case began running on October 13, 2020, and expired on October 13, 2021, absent statutory tolling under 28 U.S.C. § 2244(d)(2).[5]

---

[5] "Excluded from the one-year limitations period is '[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending.'" *Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (quoting 28 U.S.C. § 2244(d)(2) (ellipsis and alteration in original).

*Pro se* prisoner petitions are considered filed as of the "date [they] are given to prison officials for forwarding to the court clerk." *Adeline v. Stinson*, 206 F.3d 249, 251 n.1 (2d Cir. 2000) (*per curiam*).  This is known as the prison mailbox rule, and the Second Circuit has "never required prisoners to provide affidavits of service to verify when they give their documents to prison officials.  Indeed, in the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing." *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006) (unpublished opn.) (collecting cases).

Here, Brooks certifies on the last page of the Petition that he placed it in the prison mailing system on August 13, 2020, which is before the limitations period began to run.  The Motion to Amend attaches a certificate of service indicating that Brooks served it on February 23, 2021.  The Second Motion to Amend does not include a certificate of service, but the cover letter enclosing the pleadings was dated and signed June 7, 2021.  This is consistent with the envelope's postmark of June 10, 2021.  Accordingly, the Court deems the Second Motion to Amend to have been filed on June 7, 2021.  As the limitations period has not yet expired, the proposed new claims in the Motions to Amend are independently timely. Therefore, the Court need not consider whether they "relate back" to the original Petition.

### D. Propriety of Amendment

The Court turns next to the propriety of allowing an amendment under Fed. R. Civ. P. 15.  Respondent has not separately addressed the Motions to Amend, but

appears to have conflated Brooks's request for a stay-and-abeyance with his request to amend. *See* Dkt. 12 at 4 ("[R]espondent respectfully requests that this Court deny petitioner's request *for a stay and abeyance to add new claims* to his habeas corpus petition.") (emphasis supplied). Respondent thus has not discussed the applicable standards for permitting amendment under Fed. R. Civ. P. 15(a)(2). Instead, Respondent argues only that a stay is improper under *Rhines* because "good cause" is lacking for the failure to exhaust the new claims prior to commencing this proceeding. *See id.* at 3-4.

Given that all of the proposed new claims are independently timely, with substantial time remaining on the statute of limitations, the Motions to Amend have not "been delayed unduly," are not "sought for dilatory purposes or [are not] made in bad faith," and Respondent "would [not] be prejudiced," *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303 (S.D.N.Y. 1996), *aff'd mem.*, 116 F.3d 465 (2d Cir. 1997).

Respondent only argues that amendment as to Ground Eight would be futile because it is meritless. Respondent cites the Appellate Division's conclusion, on direct appeal, that trial counsel provided meaningful representation. Dkt. 12 at 4, ¶ 17 (citation omitted). However, the IATC claim presented on direct appeal did not include any of the new factual allegations contained in Ground Eight. Thus, the new IATC claim is fundamentally different from the IATC claim raised on direct appeal. "Since [a petitioner]'s claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective

21

assistance should be reviewed together." *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d

Cir. 1991).   Moreover, nearly all the new IATC allegations are based on information

outside the record, including statements from uncalled witnesses.  And New York

law provides that such claims of IATC are appropriately raised in a C.P.L. § 440.10

motion and should not be found procedurally barred. *See Pierotti v. Walsh*, 834 F.3d

171, 178 (2d Cir. 2016) ("New York case law indicates that Pierotti did not have to

raise his ineffective assistance of counsel claim on direct appeal. . . . New York

courts uniformly hold that where . . . an ineffective assistance of counsel claim turns

on facts that are outside of the trial-court record, the claim must be brought in

collateral proceedings, not on direct appeal.") (citations omitted).

Where, as here, "'some of the defendant's allegations of ineffectiveness

involve matters appearing on the record, while others involve matters that are

outside the record, the defendant has presented a 'mixed claim' of ineffective

assistance.'" *Id.* (quoting *People v. Maxwell*, 933 N.Y.S.2d 386, 388 (N.Y. App. Div.

2011).  Such a "'mixed claim of ineffective assistance' . . . 'is not procedurally barred,

and the [C.P.L. §] 440.10 proceeding is the appropriate forum for reviewing the

claim of ineffectiveness in its entirety.'" *Id.* (quoting *Maxwell*, 933 N.Y.S.2d at 388).

For these reasons, the Court cannot say that Ground Eight is clearly meritless or

that it would be futile to permit amendment. *See, e.g., Harris v. Philips*, No. 05 Civ.

2870(RRM), 2013 WL 1290790, at *6 (E.D.N.Y. Mar. 28, 2013) (court could not say

that unexhausted claim was unmeritorious where it was "based upon information

not presently before th[e] [c]ourt"); *Bravo v. Unger*, No. 10 CV 5659 VB, 2014 WL 201472, at *16 (S.D.N.Y. Jan. 16, 2014) (same).

Accordingly, in keeping with "the liberal amendment policy reflected in Fed. R. Civ. P. 15(a)," *Barney v. Conway*, 730 F. Supp. 2d 264, 286 (W.D.N.Y. 2010), the Court will allow amendment of the Petition to add Grounds Five through Twelve.

## IV.   PROCEDURAL OPTIONS AVAILABLE FOR THE "MIXED" PETITION

Now that the Court has granted the Motions to Amend, it has before it a "mixed" petition containing exhausted and unexhausted claims. "When confronted with a mixed petition, a federal court has four procedural options: (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits under 28 U.S.C. § 2254(b)(2); (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow the petitioner to exhaust his unexhausted claims." *Tripathy v. Schneider*, 473 F. Supp. 3d 220, 234 (W.D.N.Y. 2020) (citing *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 128 (E.D.N.Y. 2017); *Francois v. Warden of Sullivan Corr. Fac.*, No. 12-CV-5333 RRM, 2014 WL 1153920, at *4 (E.D.N.Y. Mar. 19, 2014); *Rhines*, 544 U.S. at 277). Since Brooks has requested a stay, the Court will consider that option first.[6]

---

[6] Because Grounds Five, Six, and Seven must be deemed exhausted, and Grounds Nine through Twelve are exhausted, the Motion to Stay is denied as moot as to those claims. Thus, the Court's analysis will focus on Ground Eight.

## A. Petitioner Has Not Met the *Rhines* Standard

In *Rhines*, the Supreme Court approved of the stay-and-abeyance procedure employed by the Second Circuit in *Zarvela v. Artuz*, 254 F.3d 374, 378-79 (2d Cir. 2001), but stated that it "should be available only in limited circumstances" so as not to undermine the "twin purposes" of the federal habeas statute: "encouraging finality" and "streamlining federal habeas proceedings." *Rhines*, 544 U.S. at 277. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts," the Supreme Court explained in *Rhines*, "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." 544 U.S. at 277. "Good cause," while necessary to obtain a stay, is insufficient on its own; the petitioner also must show that the unexhausted claims have potential merit. *See id.* ("[E]ven if a petitioner had good cause for th[e] failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.") (citing 28 U.S.C. §2254(b)(2)). *Rhines* places the following parameters on granting a stay-and-abeyance:  (1) The petitioner demonstrates that he had "good cause" for failing to exhaust his claims in state court before bringing his federal habeas petition; (2) the unexhausted claims are "potentially meritorious" or at least not "plainly meritless;" and (3) there is no indication that the petitioner has engaged in "intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 277-78.

*Rhines* did not define the "good cause" requirement. *Glover v. Herbert*, 431 F. Supp. 2d 335, 337 (W.D.N.Y. 2006). To date, "[n]either the Supreme Court nor the Second Circuit has yet defined the contours of 'good cause' in the context of stay and abeyance, and district courts in this Circuit have varied in their interpretations of the standard for 'good cause.'" *Id.* (collecting cases). In a decision issued shortly after *Rhines*, the Supreme Court mentioned the "good cause" requirement in *dictum*, stating that "filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted . . . [as a method of coping with] reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court[.]" *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

"[T]he majority" of district courts that have "addressed the issue at length have analogized the 'good cause' requirement to the requirement that a habeas petitioner demonstrate 'cause' to excuse other types of procedural defaults." *Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at *5 (E.D.N.Y. Feb. 8, 2006) (collecting cases). "These courts have reasoned that 'good cause,' like 'cause' in the procedural default context, must arise 'from an objective factor external to the petitioner which cannot fairly be attributed to him or her.'" *Id.* (quotation and citations omitted). "Even in cases which expressly reject the notion that 'good cause' is analogous to 'cause' for a procedural default," *id.* (citation omitted), "the 'good cause' has arisen from external factors, not petitioner's own decisions." *Id.* (citing *Ramchair v. Conway*, No. 04 CV 4241 (JG), 2005 WL 2786975, at *18

(E.D.N.Y. Oct. 26, 2005) (alleged ineffective assistance of counsel in post-conviction proceedings; finding that petitioner's "unexhausted claim of ineffective assistance of appellate counsel to be meritorious" and that petitioner had "good cause" for not having raised it as there was "no reason to expect [him] to understand that his appellate counsel should have complained about the failure to grant the mistrial, not the failure to allow [a witness] to testify"), *adhered to*, 671 F. Supp. 2d 371 (E.D.N.Y. 2009)).

A few courts have relied on the Supreme Court's *dictum* in *Pace* to define "good cause" even more expansively, such that it need not be based on something external to the petitioner. *See, e.g., Whitley v. Ercole*, 509 F. Supp. 2d 410, 417-19 (S.D.N.Y. 2007) ("hold[ing] that a petitioner's showing of his confusion, if reasonable, concerning the delay in his state filing would satisfy the *Rhines* requirement of 'good cause'").

It is unnecessary for the Court to choose among the various standards discussed above because Brooks has not satisfied any of them. First, the Court has evaluated the stay request against those decisions finding that "good cause" does not require "external circumstances." However, Brooks has not demonstrated "reasonable confusion" about the timeliness of a *state* court filing and therefore cannot avail himself of the *Pace* dictum. *See, e.g., Davis v. Graham*, No. 16-CV-275-FPG, 2018 WL 3996424, at *3 (W.D.N.Y. Aug. 21, 2018) ("The only confusion Petitioner has admitted to relates to federal response deadlines, which is not the type of 'reasonable confusion' that courts have decided may constitute 'good cause.'")

(citing *Nieves v. Conway,* No. 09-CV-3710 SLT LB, 2011 WL 2837428, at *3
(E.D.N.Y. July 14, 2011) ("Even if he did demonstrate 'reasonable confusion' about
the filing deadline, *Pace* is of little help to Petitioner, as it recognizes confusion
about state deadlines; it does not offer explicit support for finding good cause in
confusion as to a federal deadline.")); *Holguin v. Lee*, No. 13-CV-1492, 2013 WL
3344070, at *3 (S.D.N.Y. July 3, 2013) (finding no reasonable confusion where it
was "clear" that petitioner "was *not* reasonably confused as to whether his claims
were properly exhausted in state court") (emphasis in original).

Brooks asserts that "the good cause for failing to exhaust the new claims is
due to assigned appellate counsel's errors" in omitting "meritorious arguments"
from the appellate brief. Dkt. 13 at 2, ¶ 6. In other words, Brooks claims that it is
appellate counsel's fault that the exhaustion proceedings are not complete as to the
new claims because she did not raise them on direct appeal.

This complaint about appellate counsel cannot serve as "good cause."
Although Brooks initially contended that the original allegations in support of
Ground Eight should have been raised on direct appeal and could be exhausted in a
*coram nobis* petition challenging appellate counsel's performance, he now agrees
that all the allegations in support of Ground Eight should be raised in a C.P.L. §
440.10 motion. Moreover, since Ground Eight challenges trial counsel's
performance based on numerous off-the-record acts and omissions, appellate
counsel could not possibly have raised such claims on direct appeal, which is limited
to claims based on the trial record. *See, e.g., People v. Noland*, 592 N.Y.S.2d 465,

465 (N.Y. App. Div. 1993) ("The defendant claims that his rights were violated when the jury requested trial exhibits, and the court either failed to respond or did so without consulting counsel. Since this claim rests on matters which are not contained in the record, its presentation on direct appeal is improper.") (citation omitted). Brooks has not explained how any action or omission by appellate counsel caused his own failure to exhaust Ground Eight before coming to federal court. *See McCrae v. Artus*, No. 10-CV-2988 RRM, 2012 WL 3800840, at *9 (E.D.N.Y. Sept. 2, 2012) ("Petitioner's assertion of ineffective assistance of counsel as external grounds for cause fails because he has not connected any action by either his trial or appellate counsel with his failure to file a [N.Y. Crim. Proc. Law] § 440 collateral attack or *coram nobis* petition.").

"The absence of 'good cause' for the failure to exhaust is fatal to Petitioner's ability to fulfill the *Rhines* standard." *Carr v. Graham*, 27 F. Supp. 3d 363, 365 (W.D.N.Y. 2014) (citing *Rhines*, 544 U.S. at 277). The Court, therefore, denies the Motion to Stay.

### B. Dismissal of the Amended Petition Without Prejudice Will Not Jeopardize Petitioner's Right to Habeas Review

Having denied the request for a stay, there are three remaining ways to dispose of the Amended Petition, as noted above. The Court could deny the entire Amended Petition on the merits pursuant to 28 U.S.C. § 2254(b)(2). However, this option would be inappropriate because the Court is unable to declare that the unexhausted claims in Ground Eight are "plainly meritless." *Rhines*, 544 U.S. at 277. Brooks could delete Ground Eight and proceed on the exhausted claims.

However, given that Brooks has gone through the effort of filing a C.P.L. § 440.10 motion, the Court presumes that he does not want to abandon that claim. Thus, the third option is not feasible.

The Court concludes that the most appropriate option under the circumstances is to dismiss the Amended Petition in its entirety, without prejudice, for failure to exhaust. This course of action will not "unreasonably impair the petitioner's right to obtain federal relief[,]" *Rhines*, 544 U.S. at 278, given the substantial amount of time left on the statute of limitations and the fact that Brooks has commenced exhaustion proceedings. *See Francois*, 2014 WL 1153920, at *4 (finding no "obvious need for a stay" where petitioner had begun exhaustion process and ample time remained on statute of limitation). Dismissal of the Amended Petition without prejudice will permit Brooks to exhaust Ground Eight fully in state court before filing another Section 2254 petition for federal habeas relief. *See Slack v. McDaniel*, 529 U.S. 473, 487 (2000) ("A petition filed after a mixed petition has been dismissed [for the failure to exhaust,] before the district court adjudicated any claims[,] is to be treated as 'any other first petition' and is not a second or successive petition.").

As noted above, the statute of limitations commenced running on October 13, 2020. Absent statutory tolling under 28 U.S.C. § 2244(d)(2), it will expire on October 13, 2021. The instant habeas proceeding has not tolled the statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) ("We hold that an application for federal habeas corpus review is not an 'application for State post-

conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2).

Section 2244(d)(2) therefore did not toll the limitation period during the pendency of

respondent's first federal habeas petition."). However, as discussed below, the

C.P.L. § 440.10 is providing statutory tolling under Section 2244(d)(2).

For purposes of Section 2244(d)(2), "an application is '*properly* filed' when its

delivery and acceptance are in compliance with the applicable laws and rules

governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original).

These rules usually specify, for example, the form of the document, the deadline for

filing, where it must be filed, and any filing fee. *Id.* (citations and footnote omitted).

Because the *coram nobis* application has been subjected to a complete round of New

York's appellate review process, with no indication it was rejected for improper

filing, the pendency of the application is not counted toward the period of limitation.

Additionally, there is no indication that the C.P.L. § 440.10 motion was rejected for

filing by the trial court and, accordingly, it is a "properly filed" application for

purposes of Section 2244(d)(2). *See Bennett*, 531 U.S. at 8.

To determine how much time remains on the limitations period, the Court

must determine when the *coram nobis* and C.P.L. § 440.10 motions were filed and

when the *coram nobis* application ceased pending. "[A] state-court petition is

'pending' from the time it is first filed until finally disposed of and further appellate

review is unavailable under the particular state's procedures." *Bennett*, 199 F.3d at

120. The Second Circuit applies the prison mailbox rule to determine when a *pro se*

petition is "properly filed." *See Fernandez*, 402 F.3d at 114-16.

The *coram nobis* indicates that it was executed by Brooks on February 2, 2021. Because no other relevant date has been provided, the Court assumes this was the date he mailed the application and, therefore, deems it to have been filed on February 2, 2021. In addition, there is an affidavit of service attached to the C.P.L. § 440.10 motion, which indicates that it was mailed to Erie County Court on May 31, 2021. Dkt. 15 at 32. Accordingly, the Court deems the C.P.L. § 440.10 motion to have been filed on May 31, 2021. *See Fernandez*, 402 F.3d at 116.

"With regard to filing dates, the Supreme Court and the Second Circuit both appear to consider the date on which a post-trial collateral challenge is filed to be excluded from the limitations period." *Chrysler v. Guiney*, 14 F. Supp. 3d 418, 439 (S.D.N.Y. 2014); *see also Fernandez*, 402 F.3d at 116 ("[T]he term 'properly filed' [in Section 2244(d)(2)] fixes the date that starts the tolling of the AEDPA statute of limitations[.]") (other citations omitted)), *aff'd*, 806 F.3d 104 (2d Cir. 2015); *but see Chrysler*, 14 F. Supp. 3d at 439-40 (citing a Supreme Court decision and two Second Circuit cases supporting the opposite proposition).

The issue of whether the date of the state court's final decision in a "properly filed application" under Section 2244(d)(2) counts against the limitations period is marked by "somewhat conflicting guidance" from the Second Circuit. *See Chrysler*, 14 F. Supp. 3d at 440-41 (collecting cases). The prevailing approach in the Second Circuit is "not to exclude from the limitations period the date on which a state court files a final judgment resolving the pending motion or petition." *Id.* at 439 (citing *Saunders v. Senkowski*, 587 F.3d 543, 549 (2d Cir. 2009) ("[B]ecause [w]e held in

31

*Geraci* [*v. Senkowski*, 211 F.3d 6 (2d Cir. 2000),] that statutory tolling for the

purposes of AEDPA ends with the 'filing' of the state court's final order . . . a motion

ceases to be 'pending' for the purposes of AEDPA on the date of filing."); *Fernandez*,

402 F.3d at 116 ("[T]he term 'pending' marks the end point [of the tolling], when the

state court ultimately decides the . . . case.")).  The Court will employ the foregoing

approach and will not "exclude the day the final order was filed from the limitations

period, because the state court review is not 'pending . . . on the date of filing.'"

*Chrysler,* 14 F. Supp. 3d at 439 (quoting *Saunders,* 587 F.3d at 549); *see also*

*Hizbullahankhamon v. Walker,* 255 F.3d 65, 71 (2d Cir. 2001) (responding to the

question of "when [petitioner's *coram nobis*] motions ceased to be pending" by noting

that "*Geraci* [*v. Senkowski*, 211 F.3d 6 (2d Cir. 2000),] compels us to answer that"

the motions "ceased to be pending" on the "dates on which [they] [were] denied by

the Appellate Division").[7]

---

[7] "[A]t the time *Geraci* [*v. Senkowski*, 211 F.3d 6 (2d Cir. 2000),] was decided, New York law prohibited the appeal of *coram nobis* petitions to the Court of Appeals.  On November 1, 2002, those appeals were authorized by new legislation." *Saunders*, 587 F.3d at 549 (citing N.Y. Crim. Proc. Law § 450.90(1) (providing for appeals from "an order granting or denying a motion to set aside an order of an intermediate appellate court on the ground of ineffective assistance or wrongful deprivation of appellate counsel")).  Now, to fully exhaust *coram nobis* claims, a petitioner must pursue an application for leave to appeal to the New York Court of Appeals from the Appellate Division's denial of a *coram nobis* application.  *See, e.g., Hawkins v. Lape*, No. 08-CV-2669 (BMC), 2009 WL 890549, at *4 (E.D.N.Y. Mar. 30, 2009) (finding that the petitioner's failure to seek leave to appeal from the Appellate Division's denial of *coram nobis* relief meant that the IAAC claims raised in the petition were unexhausted); *see also Jones v. Artus*, 615 F. Supp. 2d 77, 80 (W.D.N.Y. 2009) (rejecting respondent's argument that *coram nobis* application ceased to be "pending" under Section 2244(d)(2) after the Appellate Division denied relief and noting that *coram nobis* application would not have been fully exhausted had petitioner not sought leave to appeal from the New York Court of Appeals) (citing

Applying this calculation method, which appears to represent the prevailing

Circuit view, the statute of limitations first ran from October 13, 2020, and was

stopped when the *coram nobis* application was filed on February 2, 2021, for a total

of 111 days, excluding the date of filing.  The *coram nobis* application ceased

pending when the New York Court of Appeals denied leave to appeal on June 4,

2021.  However, the CPL § 440.10 motion was filed on May 31, 2021.  So, although

tolling from the *coram nobis* application ended on June 4, 2021, tolling was already,

and is still, provided by the pending CPL § 440.10 motion filed 4 days earlier.

Accordingly, 254 days remain on the one-year statute of limitations (365 days less

111 days).  And while tolling pursuant to Section 2244(d)(2) is currently being

provided by the C.P.L. § 440.10 motion, under the prevailing Circuit approach, *see*

*Saunders*, 587 F.3d at 489, the limitations period will begin running again on the

date of filing of the state court's final order in the C.P.L. § 440.10 proceeding.

Because Brooks has already commenced exhaustion proceedings, and because

there are 254 days remaining on the statute of limitations, the Court concludes that

dismissal of the Amended Petition without prejudice will not "jeopardize the

timeliness of a [future] collateral attack." *Zarvela*, 254 F.3d at 380 (internal

quotations omitted).  Other courts in this district have dismissed entire petitions

with less time remaining. *See, e.g.*, *King v. Greiner,* No. 02CIV5810DLCAJP, 2002

WL 31453976, at *2 (S.D.N.Y. Nov. 5, 2002), report and recommendation adopted,

---

*Castro v. Fisher*, No. 04 Civ.346 DLC, 2004 WL 2525876, at *8 (S.D.N.Y. Nov. 8,
2004)).

No. 02 CIV. 5810(DLC), 2003 WL 57307 (S.D.N.Y. Jan. 7, 2003) (dismissing an entire petition with 112 days left on the statute of limitations period).

The policy considerations articulated by the Supreme Court in *Rhines* also counsel against employing the stay-and-abeyance procedure in this case. The Supreme Court emphasized that stays are not to be issued routinely and are appropriate only when outright dismissal would "unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 277-78. There is no such threat of impairment here because "AEDPA's one-year statute of limitations has [not] already expired [and will not] do so shortly." *Wesley-Rosa*, 274 F. Supp. 3d at 129. In fact, the Petition was filed before the statute of limitations even began running and before Brooks had commenced his collateral exhaustion proceedings. Granting a stay-and-abeyance under these circumstances would "decreas[e] a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition," *Rhines*, 544 U.S. at 277, and mistakenly encourage the filing of "placeholder" petitions. *See, e.g., Sanders v. Att'y Gen. of Arizona*, No. CV1905633PHXNVWDMF, 2020 WL 3271483, at *5–6 (D. Ariz. May 28, 2020), *report and recommendation adopted*, No. CV1905633PHXNVWDMF, 2020 WL 3268693 (D. Ariz. June 17, 2020) (granting a stay was "not appropriate and would encourage 'placeholder' habeas filings . . . by petitioners during their of-right state court review proceedings" in case where limitations period "remain[ed] tolled, and wholly unexpired").

Although Brooks has a fair amount of time on the statute of limitations, he is bound to watch his limitations calendar closely, and would have to file a new

Section 2254 petition promptly after his exhaustion proceedings in state court are complete.

**CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion to Amend, Dkt. 11, and the Second Motion to Amend, Dkt. 15, are GRANTED, the Petition, Dkt. 1, is AMENDED to include the claims in the Motions to Amend; the Motion to Stay, Dkts. 10 and 15, is DENIED; and the Amended Petition, Dkts. 1, 11, and 15, is DISMISSED WITHOUT PREJUDICE for failure to exhaust, but Brooks may file a new petition once he has completed exhaustion proceedings as to all claims he wishes to present as grounds for habeas relief.

The Clerk of Court is directed to close this case.

**SO ORDERED**.

Dated:   April 20, 2022
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE